UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

THOMAS MACLEOD,
            (Petitioner),        )
                                 )
                                 )
v.                               )        CIVIL ACTION NO.04-11629-PBS
                                 )
                                 )
DAVID NOLAN,                     )
            (Respondent).        )


PETITIONER'S MEMORANDUM IN SUPPORT OF HIS PETITION

FOR A WRIT OF HABEAS CORPUS


INTRODUCTION:

        Pursuant to 28 U.S.C. § 2254.

PROCEDURAL HISTORY:

    On February 17,1999, a Suffolk County grand jury

returned an indictment against Thomas MacLeod (petitioner),

for Breaking & Entering/in the daytime, with intent to commit

a felony. M.G.L. 266 § 18. S.A. 42-51.[1]

    Then on March 5,1999 a second grand jury proceeding was

held in Suffolk County. That grand jury returned an indictment

against the petitioner for being an Habitual criminal.M.G.L.

c279 § 25. (S.A. 51-54).

    In Suffolk Superior Court on November 1,1999 (S.A.56-74),

the petitioner plead guilty to the indictment. He received a

Ten year sentence,to MCI-Walpole. Nunc pro tunc to May 17,1999.

and concurrent with the sentence he was then serving.

_____

1 For the courts conveince, the Respondent's Supplemental
Answer will be numbered and referred to as (S.A.(page number).

Petitioner filed a pro se Motion For A New Trial on/ about July 29,2001.(S.A. 75-83).Appealate counsel was appointed, around July 2,2001.(S.A.7). Petitioner Motioned For Funds, for an investigator. That motion was denied.[2] (S.A.7 No.10). Appealate counsel motioned the court to Supplement The Motion For A New Trial. (S.A. 8 No.14).

A hearing was held on May 12,2003, concerning the Motion For a New Trial.(S.A. 105-118). The trial judge (Donovan,J.), denied that motion. Her Orderis,(S.A.119-120).

Appealate counsel appealed to the Massachusetts Appeals (Appeals Court), which affirmed the judges decision.(S.A.217 218) Appealate's brief is at (S.A.10-34). The Commonwealth's Response is, (S.A. 122-154).Also see, 61 Mass. App. Ct.1105; 2004 WL 1077954, for the Appeals Courts decision.

Further Appealate Review, was denied. On June 30,2004. (S.A. 234). All petitioners attempts to gain surcease in the state courts system proved unavailing.

This Petition was filed, in the federal court.

FACTS:

It is not necessary to rehearse the facts, to understand the petitioners constitutional claims. For those who thirst for such additional detail, can find it sucinctly stated in Appealate brief, (S.A. 17-18). And in the Commonwealth's brief (S.A. 128-130).

---

2 The petitioner has Motion To Supplement The Record, to add documents, like the Judges Decision to deny the petitioner Funds. Referance to that Supplemental Record, will be,(EX.___)

See, Chandler v. Fretag, 348 U.S. 3,8 (1964);quoting from
Oyler v. Boles, 368 U.S. 448,452 (1962).

     The essence of petitioners claim is that the Appeals Court
Unreasonably applied, or contrary applied the petitioners
constitutional protection and safeguards to a jury trial on the
Habitual portion of the indictment. These protections and
constitutional safeguards are built in the following case law
(clearly established by the Supreme Court of this land).That
constitutional guarantee is the Sixth Amendment:

     "In all criminal prosecutions, the accused shall
          enjoy the right to a speedy and public trial by
          an impartial jury" (Amdt.6)

See also, Duncan v. Louisiana, 391 U.S. 145,149 (1968). That
right indisputably entitles the petitioner to a "jury
determination that he is guilty of every element of the crime
with which he is charged," United States v. Gaudin,515 U.S. 506,
510 (1995); Sullivan v. Louisiana,508 U.S. 275,278 (1993).

     Having laid the path in bedrock, the legislature set the
law of surpassing importance, in mandating the trial procedure
for trying habitual criminals,M.G.L.278§11A.That method was
not acomplished here, and clearly established case law says it
must.It certainly stands on it's own grammatical feet, and
contains mandatory language. In relevent part;

     "If a defendant pleads guilty...then before sentence
     is imposed, the defendant shall be further inquired of
     for a plea of guilty or not guilty to that portion of the
     ... indictment alleging that the crime charged is a ...

subsequent offense. If he pleads guilty thereto
sentence shall be imposed; if he pleads not guilty
thereto, he shall be entitled to trial by jury on
the issue of conviction of a prior offense, subject
to all the provisions of law governing criminal trials.
A defendant may waive trial by jury." (M.G.L. 278§11A).

The colloquy (S.A.105-118) unconsitutionaly combined the
two charges, the substanative (B&E), with the Habitual criminal
charge. The petitioner was NOT"further inquired" as required,
by chapter 278 section 11A.to a plea on the habitual portion of
the indictment.(S.A. 193-210). All that needed to happen was a
simple further inquiry by the court to satisfy the law and the
following clearly established law.

But first the petitioner will resonate the unreasonable
or contrary opinion/decision of the Appeals Court, the second
paragraph is relevent to this matter, it says;

> "In the course of the plea colloquy the judge advised
> the defendant that by pleading guilty he waived his
> right to trial by jury on the indictment.The colloquy
> occurred in context of the clerk, the judge, and the
> prosecutor each addressing the habitual offender aspect
> of the indictment.(R.22,23,29,36). The defendant
> memorialized his waiver by signing a jury waiver form.
> (S.A.162-163). There is no merit to the strained contention
> that a colloquy must advise a defendant redundantly that
> waiver of the right to a jury trial encompasses the
> entire indictment, including enhanced penalty, or sub-
> sequent offense provisions. Such is apparent from the
> colloquy as a whole." Commonwealth v MacLeod, 2004 WL

1077954 (Mass.App.Ct.) (S.A. 217-218).

That opinion is a unreasonable application of the facts.
First, the trial judge never "advised" the petitioner "that by
pleading guilty he waived his (complete) right to trial by jury"
on the whole indictment. And again he was NEVER "further

6.

inquired", for aplea on the Habitual portion of the indict-
ment. Unequivocally he was NEVER "advised" that by pleading
guilty on the substanative offense, that he was waiving his
rights to a second trial on the habitual portion of the
indictment.

Now the "memorialized waiver", that was introduced by the
Commonwealth to the Appeals Court. That document was signed
(which I admitted to signing (S.A.69)), but was signed during
an aborted (change of plea) hearing before another judge. It
evens contains the judges name, on that "memorialized waiver".
JUDGE McDANIEL.I was certainly in that other courtroom before
McDaniel J.on November 1,1999. However, Massachusetts General
Laws c263 § 6 requires a distinct, seperate and different
waiver for that second trial waiver.

There is a gauntlet of merit to the petitioners "contention"
that the colloquy must advise the petitioner redundantly that
waiver to a jury trial on the habitual portion of the indictment.
There is so much "merit" and Contention that the Supreme Court
says so too.

The "crucial inquiry" begins with the first algorithm
built in O'Brien at 24,(the habeas court ask whether the Supreme
Court has proscribed a rule that governs the petitioners claim).

".. Our answer to that guestion was foreshadowed by our
opinion in Jones v. United States,526 U.S. 227 (1999).The jury
trial guarantee's of the Sixth Amendment, any fact (other than
prior convictions) that increases the maximum penalty for a crime
must be charged in an indictment and submitted to a jury". See
Apprendi v. New Jersey,530 U.S. 466,476 (2000).

Now before I go on, " other than prior convictions",
seems to create alittle hurdle for the petitioner. So he'll
jump that quickly. The above quotation comes first by <u>Jones</u>
at 243 footnote #6."the constitutional protections figure in
this analysis by identifying the elements defining criminal
liability. But onlythe required procedures for finding facts that
determine the maximum permissable penalty/punishment," n.#6.
The rest of "other than prior convictions" will be disposed of
by the remainder of this argument, and clearly established law.

Facts that constitute a crime, and which elements or,
ingredients of a crime. That can be reflected in the second
grand jury, which indicted the petitioner sixteen (16) days
after the grand jury indicted him for the substanitive crime.
The Habitual indictment has ingredients that constitute a element
that common law dictates. That indictment alleged conduct that
invokes the rights to a jury trial.Or, "those facts that deter-
mine the maximum sentence the law allows," <u>Apprendi</u> at 499.
" Read together <u>McMillian</u> and <u>Apprendi</u> mean that those facts
setting the outer limits of a sentence, and of the judicial
power to impose it are the elements of the crime for the purpose
of this constitutional analysis." See, <u>Harris v. United States</u>,
536 U.S. 545,567 (2002).

The " two leading antebellum cases on whether recidivism
is an element were, <u>Plumbly v. Commonwealth</u>, 43 Mass.413; 1841
WL 3384 (1841) and, <u>Tuttle v. Commonwealth</u>,68 Mass.505,(1854 )...
and WL 5131 (1854). In the latter the court explained the
reason of the prior conviction: " When the statue imposes a
higher penalty upon a second and third conviction,respectively

8.

it makes the prior conviction of a similar offense a part of
the description and character of the offense intended to be
punished; and therefore the fact of such prior conviction must
be charged, as well as proved. It is essential to an indict-
ment , that the facts constituting the offense intended to be
punished should be averred." Apprendi, at 506

   The court rested this rule on the common law and the
Massachusetts equivelent of the Sixth Amendment Notice Clause.
Apprendi at 507 ( Justice Thomas, whom Justice Scalia joins as
to part I & II concurring).

   Even in McMillian, the Supreme Court did not budge from that
position that, " a state scheme that keeps from the jury facts
that expose the defendant to greater or additional punishment,"
may raise serious constitutional concern. ID. at 88. The court
emphasized repeatedly that an increase of the maximum penalty
was not at issue in McMillian. This is primarily because it
" neither altered the maximum penalty for the crime committed
nor created a seperate offense, calling for a seperate penalty;
it operated solely to limit the sentencing courts discretion
in selecting a penalty within the range already available to it
without a special finding of visable possession of a firearm."
ID. McMillian at 87-88.

   In this matter the petitioner was threatened with an alter-
ed and mandatory punishment, created a seperate offense and
called for a special penalty out of reach of the judges discre-
tion.

   Then comes Blakely v. Washington, __U.S.__,124 S.Ct. 2531

9.

(2004); 2004 WL 1402697.

In Blakely, the Washington State Courts rejected his
on the basis that Apprendi only applies where the sentence
metered out is greater than the "statutory maximum." Blakleys
sentence was less than the statutory maximum and as a result
immune from Apprendi attack. However, the Supreme Court said,
the "statutory maximum" for Apprendi purposes is the maximum
sentence a judge may impose solely on the facts reflected in
the jury verdict, or admitted by the defendant.

In this matter the judge found , without "further
inquiry" that the petitioner was an Habitual criminal within
the contours of MGL c279 § 25. That statue mandates the maximum
penalty or sentence for the crime previously adjudged. The
Supreme Court found that Blakley's sentence violated the Sixth
Amendment. Because it was based on facts found by a judge.( a
federal constitutional right to have a jury determine beyond a
reasonable doubt all facts necessarylegally to his sentence)
2004 WL 1402697 *4.

The Supreme Court in Jones, " One contributor to the
ratification debates, for example commenting on the jury trial
guarantee in Art.III, § 2, echoed Blackstone in warning of the
need 'to guard with the most jealous circumspection against
the introduction of new, and aritrary methods of trial which
under a variety of plausible pretenses, may, in time,
imperceptibly undermine this best preservation of LIBERTY!'"
A (New Hampshire) Farmer,no. 3 June 6,1788. quoted in the
Complete Bill Of Rights 477 (N.Cogan ed.1997," ID. at 526 U.
S. 248.

The Supreme Court has "prescribed" a rule that petitioner bases his premise, and argument on. This Federal court should then take the next step; To"determine whether the states court use of (or failure to use) existing law in deciding the petitioners claim involved an unreasonable or contrary to it's application of that precedent." O'Brien, at 24. The Appeals court supplied all the trappings, that sufficiently speak of a trial by jury,( on the Habitual portion of the indictment.

" There is no principle of law better settled than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears." Voorhees v. Jackson, 35 U.S.(10 Pet) 449 (1836).

In peroratation; " The Framers would not have thought it to much to demand that,before depriving (the petitioner) of (ten) years of his liberty, the state should suffer the modest inconvience of submitting (or inquiring further), it's accusation to the ' unanimous suffrage of twelve of his equals and neighbors' 4 Blackstone Commentaries at 343, rather than a lone employee of the state. Blakley, at 124 S.Ct. 2543.

## CONCLUSION: ARGUMENT I

The Massachusetts courts unreasonably applied, or applied contrary to the petitioners claim, that the Habitual portion of the indictment required a simple further inquiry and a jury trial. The Great Writ should issue.

11.

ARGUMENT No.II

## PETITIONER'S CLAIM THAT HE SUFFERED
## INEFFECTIVE ASSISTANCE OF COUNSEL

" To establish that counsel was constitutionally deficient the petitioner must demonstrate both, that his attorney's performance was inferior to the point of objective unreason-ableness, and that he suffered concomitant prejudices from this incompetent lawyering." See, United States v. McGill, 11 F. 3d 223 (1st Cir. 1993); Strickland v. Washington, 406 U.S. 668, 689-694 (1984).

The following examples, are the aileged incompetent lawyering that the petitioner says that denied him a fair trial. Or simply said, caused him to plead guilty "unknowingly and unintelligently," Hill v. Lockhart, 474 U.S. 52,57 (1985).

1) Petitioner's counsel sent a letter (S.A. 84-85), to the Assistant District Attorney, on August 24,1999. That correspondence said (in relevent) part;

> " As I have mentioned to you before that in
> my opinion anyway, it's not a case for a trial.
> Given the facts and the evidence in this case, it
> is not winnable, and to go forward with a trial,
> from the defense point of view, would be pennywise
> and pound foolish."    (S.A. 93-94).

That correspondence and the acquisition of any defense strategy, waived the petitioners rights to a fair trial. And All his constitutional rights, under the United States Constitution.

2) Defense counsel further failed to properly investigate the facts of the case. That would have disclosed  an

12.

affirmative defense, to the crime. Petitioner after read-
ing the grand jury testimony and other documents (S.A. 92),
contends that he had permission from the homeowners and had
done construction work on this home previously. [3] The
petitioner told defense counsel about the roofing and paint
ing he had done on 449 West Fourth Strret, but counsel never
investigated this. An investigation would of likely proved
that the petitioner was lawfully on the premises. Counsel
was ineffective for not investigating the petitioners
assertions of innocence.

3) And counsel was incompetent when he failed to secure
two trials, or two distinct trials, under M.G.L.c 278 § 11A.
As already briefed in argument No. I. Counsel should have
advised the petitioner of his rights to two seperate trials
on the Habitual portion of the indictment.. That failure to
properly secure the petitioners constitutional rights was
ineffectiveness of counsel.

The blush here is on the Appeals Courts unreasonable or
contrary applications of clearly established (by the Supreme
Court), in it's decision:

        The petitioner "maintains" that;
    " (2) trial counsel was ineffective in tendering
    ... in coercing the defendant to waive his jury trial
    right and plead guilty, in failing to investigate a
    defense, and in corresponding with the prosecutor.
    We affirm, substatially for the reasons set forth by
the judge in her cogent memorandum of decision (S.A. 212-213)
    and amplified in the Commonwealth's brief at pages
    six through twenty four." See, (S.A. 132-151) and

3    The petitioner's claim of innocence was proclaimed to
the trial judge. ( Ex. "A"). The trial judge dismissed this
when she denied the petitioner a Motion For Funds, for an
investigator.

13.

the Appeals court decision at,(S.A. 171).

Even though the Appeals Court relied on the trial
judges decision and Commonwealth's brief. The petitioner
alleges matters, and facts outside the record and
unequivocally upon the record and stated in amplificatously
by the Appeals Court. What the petitioner is attempting to
articulate here is that a hearing was held on the claim of
ineffectiveness. But no evidense or any testimony was ever
procurred for his allegation of incompetent lawyering.So if
for one nanosecond we can sit back and listen to this habeas
quagmire, before he resumes arguing clearly established law.

On May 12,2003 the trial judge conducted a hearing.And
petitioner was represented by appealate counsel. That hear-
ing (S.A. 105-118) dealt solely with the matter of the lack
of a jury trial towards the Habitual portion of the indict-
ment. The court did not entertain any editification on the
ineffectiveness claim. Nor did it, " tarry long in examining
this claim." Marmol v. DuBois, 855 F. Supp. 444,449 (D.Mass.
1994). In Marmol, as here " some ineffective assistance
claims might be capable of presentation solely on the record
itself, most such claims require the independent development
of evidence outside of and collateral to, the criminal
proceeding." Brien v. United States, 695 F2d 10,15 (1st cir
1982); see also Cyler v. Sullivan, 446 U.S. 335,348 (1980).

14.

The trial court should have heard evidence. All that was needed was counsel to appear, See Exhibit C in the Supplemental Record. That letter is from the petitioners counsel. Dated 10-06-02. It says " I'll do whatever I can to help out. That's a promise." (Ex. C). The federal court here should schedule a evidentiary hearing into the merits of the petitioners claims.

" Ordinarily this court defers to written state court findings". Summer v. Mata, 449 U.S. 539, 546-547 (1981).Here additional facts would assist the court in searching the allegations of the petitioner. Especially into the lack of investigation about his being lawfully on the premises and not guilty of this crime.And to substantiate some of the alleged "incredible" proclamations of the petitioner. The " resolution of creditibility issues in habeas proceedings is of course, the primary purpose of an evidentiary hear-ing." Rodriquez-Rodriquez v. United States, 929 F.2d 747,749 (1st cir.1991). The second sentence of the Appeals Court decision third paragraph; "The judge was free to disregard as self-serving the defendant's affadavit, which was the sole support for the Motion." (S.A. 171). The Affidavit is at (S.A. 103). Those identify ACTS or OMISSIONS that significantly highlight trial counsels alleged ineffectiveness. The Appeals Court unreasonably applied the facts to the petitioners claim. A layman like the petitioner, " will ordinarily be unable to recognize counsel's errors and to evaluate counsels professional performance." Powell v. Alabama,287 U.S. 45,69 (1932).

15.

Counsel's performance should be evaluated to gauge the reasonableness, from the perspective at the time and in the light of all the circumstances. Strickland, at 689. An evidentiary hearing can gauge that performance.

Petitioner has pointed at several issues that are significantly on the record, The correspondence to the Asst. District Att. and the lack of the right to a jury trial on the Habitual offense. Two constitutional claims that are very illuminated on the record. The Appeals court reliance on the judges decision and the Commonwealths brief are unreasonablt applied to this matter.

The other claim that counsel failed to investigate the petitioners statement that he was lawfully on the premises. So upset the adversial process, balance between prosecution and defense that it rendered the whole process unfair, and the plea of guilty suspect. See, United States v. Cronic, 466 U.S. 648, 655-657 (1984).

Those acts on the record and the omissions show how unreasonable the Appeals Courts Decision was, according to the Strickland strictures.

The concern then is the flow into McMann v. Richardson, 397 U.S. 759,771 (1970), and Tollet v. Henderson, 411 U.S. 258 (1973).Although the sentencing proceeding in Strickland, was premised in part on the similarity between that proceeding and the usual criminal trial, the two-part standard scheme seems to be applicable to ineffective-assistance claims arrising out of the plea process. See, Hill v. Lockhart, 474

16.

U.S. 52,57 (1983).

Which brings this to the next component of Strickland, the "prejudice" requirement. " Attorney errors come in an infinate variety and are likely to be utterly harmless in a particular case, as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is a art, and an act or omission that is un- professional inone case may be sound or even brilliant in another. Even if a (petitioner) shows that particular errors of of counsel were unreasonable, therefore, the (petitioner) must show they had an adverse effect on the defense." Strickland, at 693. Petitioner has sufficently highlighted the particular errors of counsel that were unreasonable, and had an adverse effect on the plea.

As identified in Lockhart, " The two part Strickland test applies to challenges of guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of Strickland's test is nothing more than a state- ment of the standard of attorney competence already set forth in Tollet v. Henderson, supra, and McMann v. Richardson, supra. The second, or " prejudice " requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the petitioner must show that there is a reasonable probability

17.

that, but for counsels error he would not have plead guilty and would of insisted on going to trial." Id. at 58-59.

It is NOT᳴ debatable hear that had the petitioner known of counsels letter to the A.D.A. that he would of dismissed his counsel. Along with the fact that that act very well denied the petitioner from ever having a fair trial. That abandonment by counsel and the acquisition of the defense strategy denied the peitioner counsel as required by the Sixth Amendment.See, <u>Gideon v. Wainwright</u>, 372 U.S. 335,344 (1963).

The other assertions of the petitioner were not reflected on the record. The trial judge was required under Mass. R. Crim. P. 30(c)(3), to recongnize the substantial and constitutional issues that he raised. That is why an evidentiary hearing is necessary if the record here is incomplete.

Certainly, the 'acts or, omissions' of counsel unprofessional service prejudiced and coerced the petitioner into pleading guilty.And that behavior exhibited fell below the objective reasonableness the constitution requires.

Thus this court should use the crucial inquiry and declare that the states courts decision is an unreasonable or, contrary application of clearly established law as decided by the Supreme Court.

CONCLUSION:

Because as outlined above by clear and convincing evidence the Great Writ should issue.

By the Petitioner,

Thomas MacLeod
MCI-CJ
P.O. Box 100
South Walpole, MA.

Dated: October 19,2004

                                    18.