UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS MACLEOD, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-11629-PBS |
| DAVID NOLAN, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION ON PETITION FOR
## WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

January 24, 2007

DEIN, U.S.M.J.

## I.  INTRODUCTION

The petitioner Thomas MacLeod ("MacLeod" or the "defendant" or the "petitioner") was indicted by a Suffolk County grand jury for breaking and entering a building with intent to commit a felony, and was charged as an habitual criminal.  He pleaded guilty on November 1, 1999 following a colloquy with the court, Justice Elizabeth Donovan presiding.  MacLeod was eventually sentenced to ten (10) years of imprisonment in accordance with the applicable Habitual Criminal sentencing statute, Mass. Gen. Laws ch. 279, § 25.

MacLeod, pro se and then through counsel, filed motions for a new trial which were denied after hearing. MacLeod then appealed, claiming that the plea colloquy had inadequately informed him of his right to a jury trial on the habitual offender portion of the indictment and that his trial counsel was ineffective for various reasons.  The appeal

was denied by the Massachusetts Appeals Court in an unpublished Memorandum and

Order issued pursuant to Rule 1:28.  <u>Commonwealth v. MacLeod</u>, 61 Mass. App. Ct.

1105, 808 N.E.2d 331, No. 03-P-1125, 2004 WL 1077954 (May 13, 2004).  MacLeod's

subsequent application for leave to obtain further appellate review ("ALOFAR") was

denied by the Massachusetts Supreme Judicial Court without opinion.  <u>Commonwealth v.</u>

<u>MacLeod</u>, 442 Mass. 1104, 819 N.E.2d 1229 (2004) (table).

 This matter is presently before the court on MacLeod's timely petition for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254.  In his Petition, MacLeod contends that

he was denied effective assistance of counsel in violation of his Sixth Amendment rights

because his "guilty plea was coerced by counsel, and he was ineffective."  Petition

(Docket No. 1) at Ground one.  He further contends that he was denied a jury trial on the

habitual offender portion of his indictment, in violation of his Fifth Amendment rights.

<u>Id.</u> at Ground two.  For the reasons detailed herein, this court recommends to the District

Judge to whom this case is assigned that MacLeod's Petition for Writ of Habeas Corpus

be DENIED.

## II.  **STATEMENT OF FACTS**[1]

## **The Guilty Plea and Sentencing**

Apparently two grand jury proceedings were held in connection with the charges brought against MacLeod.  On February 17, 1999, a Suffolk grand jury addressed the crime of breaking and entering with the intent to commit a felony (Mass. Gen. Laws ch. 266, § 18), and on March 5, 1999, a second grand jury addressed MacLeod's status as an habitual offender (Mass. Gen. Laws ch. 279, § 25).  See SA Ex. 2 (Defendant's Brief to Appeals Court) at 6.  On March 5, 1999, MacLeod was indicted for breaking and entering a building with intent to commit a felony and charged as an habitual offender.[2]  Id.

On November 1, 1999, MacLeod, who was represented by counsel, pleaded guilty before Suffolk Superior Court Justice Elizabeth Donovan.  SA Ex. 3 at 11/1/99 Transcript

---

[1]  The respondent has submitted the record below in a Supplemental Appendix ("SA") filed as Docket No. 8.  The state trial and appellate courts' findings of facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  See Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002), cert. denied, 537 U.S. 1236, 123 S. Ct. 1360, 155 L. Ed. 2d 202 (2003).  Unless otherwise indicated, the facts are not in dispute.

[2]  MacLeod contends that there were two indictments – on February 17, 1999, he was allegedly indicted for the substantive offense of breaking and entering in the daytime, with the intent to commit a felony (Mass. Gen. Laws ch. 266, § 18), and on March 5, 1999, he was allegedly indicted "for the habitual criminal offense" (Mass. Gen. Laws ch. 279, § 25).  See Petitioner's Reply (Docket No. 16) at 1-2.  However, the docket sheet indicates only one indictment (see SA Ex. 1) and MacLeod's own counsel described two grand jury proceedings but only one indictment in the description of proceedings provided to the Appeals Court.  SA Ex. 2 at 6-7.  Only one indictment, which references both the breaking and entering crime and that, based on his prior record, MacLeod is to be considered a habitual criminal, is included in the record. See SA Ex. 4 at App. 14-16.  While MacLeod argues in a conclusory manner that some copies of the indictment in the record were "altered and redacted," see Petitioner's Reply at 2, the indictment is consistent with the plea colloquy and other briefs filed by counsel.

(hereinafter "Plea Tr."). As MacLeod was informed by the clerk, he was "charged with breaking and entering with the intent to commit a felony, pursuant to Mass. General Laws, Chapter 266, Section 18, being charged as an habitual criminal." Plea Tr. at 4. The court then asked MacLeod a series of questions so that the judge could be assured that the change of plea was "made voluntarily and with full knowledge of the consequences." Id. at 5-6. After confirming that MacLeod's counsel had explained to him what the Commonwealth had to prove in order to "convict him of the crime as charged" and the maximum potential penalty, the court further confirmed that MacLeod understood that he was giving up his constitutional rights, including, without limitation, the right to a trial with or without a jury. Id. at 6-9. Furthermore, the trial judge confirmed that MacLeod understood that the joint recommendation was of a ten (10) year sentence, to be served concurrently with a Middlesex sentence he was then serving. Id. at 6-7.

As part of the plea colloquy, the government then described the expected evidence if the case went to trial. As the Assistant District Attorney stated:

> Your honor, were this case to go to trial the Commonwealth would present evidence that on January the 21st of 1999, at approximately 7:39 in the morning, officers responded to a radio call for a breaking and entering in progress at 449 West Fourth Street in South Boston.

> Upon arrival the officers noticed that a small-paned window next to the front door was broken, which would give access to reach the front door through the window. At that time the officers also saw a ladder, fifteen feet high, extending from the back to the second-floor apartment.

-4-

> Other units responded.  They surrounded the building while they
> waited for an MBTA police dog.  While they had the building
> surrounded, officers observed the defendant Thomas MacLeod jump
> from the second-story side window of the dwelling onto the roof of
> the next-door house, attempting to escape.  The officers apprehended
> the defendant at the scene.
>
> The officers then entered the apartment.  It was the second-floor
> apartment.  They noticed several drawers had been overturned,
> though nothing had been taken.  The property was not owned by the
> defendant.  It was owned by elderly women and controlled by a
> trustee.  The defendant did not have permission to be there.

Id. at 9-10.  MacLeod admitted the truth of these facts, admitted that he did commit the

facts as described, and stated that there were no facts which were different.  Id. at 11-12.

   The Commonwealth separately presented the facts relating to the charge of being

an habitual criminal.  Id. at 11.  As the government stated:

> As to the habitual criminal, your Honor, the Commonwealth would
> present evidence that the defendant Thomas MacLeod is the same
> Thomas MacLeod who, on July the 9th of 1984, was convicted in
> Middlesex Superior Court of the crime of breaking and entering with
> intent to commit a felony, which occurred on the 19th day of January,
> 1984, and was sentenced to MCI, Cedar Junction and committed for
> a term of seven years, nine months to nine years.
>
> And also, this man, Thomas MacLeod, is the same Thomas
> MacLeod who on May the 16th of 1994, was convicted in the
> Middlesex Superior Court of breaking and entering, the offense
> occurring on August 19, 1993.  He was sentenced and committed on
> that offense to MCI, Cedar Junction for a term of nine to ten years,
> five years to be served.
>
> And that would essentially be the Commonwealth's evidence on
> those two matters.

Id. at 11.  In response to questions by the Court, MacLeod specifically admitted that he was the same Thomas MacLeod who had been convicted of these prior two crimes, which convictions were specifically identified by the judge.  He even corrected the judge when she misstated one of the dates.  Id. at 12-13.

Finally, the trial judge confirmed that MacLeod had not been forced to plead guilty, was pleading guilty willingly, freely and voluntarily, and that MacLeod had "had enough time with your attorney to discuss your case, your rights, your defenses, and the consequences of a change of a plea to guilty."  Id. at 13.  MacLeod also confirmed that he felt that his attorney had acted in his best interest and that he had been fairly represented by his attorney.  Id. at 14.  MacLeod confirmed that he had signed a "Waiver of Defendant's Rights" after reviewing it with his attorney.  Id. at 14-15.  The Court accepted the plea and imposed the recommended sentence, to be served concurrently with the Middlesex sentence MacLeod was then serving.  Id. at 15-19.[3]

## Subsequent Proceedings

On August 7, 2000, MacLeod filed a pro se motion for a new trial.  SA Ex. 1. Counsel was subsequently appointed and on November 22, 2002 supplemental pleadings

---

[3]  MacLeod was originally sentenced to a term of ten years to ten years and one day.  A motion to correct the sentence was subsequently allowed, and MacLeod was sentenced to a straight ten years in accordance with the habitual criminal sentencing statute, Mass. Gen. Laws ch. 279, § 25 ("Whoever has been twice convicted of crime and sentenced and committed to prison ... for terms of not less than three years each ... shall, upon conviction of a felony, be considered an habitual criminal and be punished by imprisonment in the state prison for the maximum term provided by law as a penalty for the felony for which he is then to be sentenced.").

were filed in support of the motion for a new trial, along with an affidavit of MacLeod.

Id.  In the affidavit, MacLeod attested that he had never been informed that he had a right

to a trial on the habitual offender portion of the indictment separate and apart from a trial

on the breaking and entering charge, and that he wanted to withdraw his guilty plea.  See

Affidavit included in SA Ex. 3.  Following a hearing, the court, by Donovan, J., issued a

Memorandum of Decision and Order denying the motion for a new trial.  SA Ex. 3 at

A.14.  Based on his answers during the plea colloquy that he had not been threatened or

forced into pleading guilty, the court rejected MacLeod's contention that the clerk had

forced him into pleading guilty.  Id.  In addition, the court ruled in relevant part as

follows:

> Next, Mr. MacLeod argues he should have been allowed [two]
> separate hearings: on the underlying charge and the habitual.  The
> transcript of the plea colloquy is clear that the defendant was
> informed of the constitution[al] rights he waives by pleading guilty
> including the right to a trial, with or without a jury.  The prosecutor
> set forth the facts he would prove for the breaking and entering in
> the daytime.  He continued by reciting the convictions which
> supported the habitual charge.
>
> Mr. MacLeod was asked if [he] heard the facts recited by the
> prosecutor.  He answered YES.  After admitting the facts recited
> were true and he did in fact commit the acts, Mr. MacLeod was
> asked if he was the same person convicted on the two charges in
> support of the habitual offender part of the indictment.  As to each
> conviction he responded yes.  There is nothing requiring a new trial
> based on the plea colloquy.
>
> Finally, he argues there is new evidence.  Mr. MacLeod claims he
> had permission from the homeowner to be on the premises.  How-
> ever, that statement contradicts his testimony under oath during the

> colloquy that he committed a breaking and entering at 449 West
> Fourth Street, South Boston.

Id.

MacLeod appealed the denial of his motions for a new trial. On appeal he alleged that "(1) the plea colloquy inadequately apprised him that he was entitled to a jury trial on the habitual offender portion of the indictment; and (2) trial counsel was ineffective in tendering a pretrial conference report signed by someone other than the defendant, in coercing the defendant to waive his jury trial right and plead guilty, in failing to investigate a defense, and in corresponding with the prosecutor." SA Ex. 5. The Appeals Court affirmed the lower court's ruling "substantially for the reasons set forth by the judge in her cogent memorandum of decision and amplified in the Commonwealth's brief[.]" Id. (record citations omitted). As the Appeals Court ruled:

> In the course of the plea colloquy the judge advised the defendant
> that by pleading guilty he waived his right to trial by jury on the
> indictment. The colloquy occurred in context of the clerk, the judge,
> and the prosecutor each addressing the habitual offender aspect of
> the indictment. The defendant memorialized his waiver by signing a
> jury waiver form. See *Commonwealth v. Kopsala*, 58 Mass. App.
> Ct. 387, 390 (2003). There is no merit to the strained contention that
> a colloquy must advise a defendant redundantly that waiver of the
> right to a jury trial encompasses the entire indictment, including
> enhanced penalty or subsequent offense provisions. Such is apparent
> from the context and colloquy as a whole.
>
> Likewise, the defendant's assertion of ineffectiveness of counsel,
> made pursuant to *Commonwealth v. Moffett*, 383 Mass. 201 (1981),
> lacks substance. The judge was free to disregard as self-serving the
> defendant's affidavit, which was the sole support for the motion.
> See *Commonwealth v. Colon*, 439 Mass. 519, 530 (2003);
> *Commonwealth v. Pingaro*, 44 Mass App. Ct. 41, 48 (1997).

SA Ex. 5 (record citations omitted).

MacLeod filed an application for leave to obtain further appellate review. SA Ex. 6. It was denied by the Supreme Judicial Court without opinion. SA Ex. 7. This timely habeas petition followed.

Additional facts will be provided below where appropriate.

### III.  DISCUSSION

#### A.  Standard of Review

The standard of review to be applied to MacLeod's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).

If the state court decision was not "contrary to" federal law as defined by the Supreme Court, the habeas court must then determine "whether the state court ruling was an 'unreasonable application' of the Court's precedent." Vieux v. Pepe, 184 F.3d 59, 65-66 (1st Cir. 1999), cert. denied, 528 U.S. 1163, 120 S. Ct. 1178, 145 L. Ed. 2d 1086 (2000). An "unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694, 122 S. Ct. at 1850. In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (internal quotation and citation omitted). This "increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." Id. Thus, "a habeas petitioner must do more than merely identify an incorrect result." Jackson v. Coalter, 337 F.3d 74, 81 (1st Cir. 2003). "Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000). See also Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005); Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004), cert. denied, 543 U.S. 1093, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005).

The standard for judging the merits of a claim of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As the Strickland court held:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the

defendant by the Sixth Amendment.  Second, the defendant must
show that the deficient performance prejudiced the defense.  This
requires showing that counsel's errors were so serious as to deprive
the defendant of a fair trial, a trial whose result is reliable.  Unless a
defendant makes both showings, it cannot be said that the conviction
... resulted from a breakdown in the adversary process that renders
the result unreliable.

Id. at 687, 104 S. Ct. at 2064.  "Under the first prong of Strickland, there is a 'strong

presumption' that counsel's strategy and tactics fall 'within the range of reasonable

professional assistance,' and courts should avoid second-guessing counsel's performance

with the use of hindsight."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting

Strickland, 466 U.S. at 689, 104 S. Ct. at 2065).  "It is only where, given the facts known

at the time, counsel's choice was so patently unreasonable that no competent attorney

would have made it, that the ineffective assistance prong is satisfied."  Id. (quotations and

citation omitted).

    "Under the prejudice prong, not all errors by counsel are sufficient to meet the

standard of a reasonable probability that, but for the counsel's errors, the result of the

proceeding would have been different."  Id.  The probability must be "sufficient to

undermine confidence in the outcome," and the burden is a "heavy" and "highly

demanding" one.  Id. (internal quotations and citations omitted).  "A defendant's failure

to satisfy one prong of the Strickland analysis obviates the need for a court to consider

the remaining prong."  Id.

    Applying these principles to the instant case, the petitioner has failed to establish

that the Appeals Court's adjudication resulted in a decision that was contrary to or

involved an unreasonable application of clearly established federal law.  Therefore, MacLeod's habeas petition should be denied.

### B.    MacLeod's Objection to His Plea Colloquy

MacLeod's principal argument is that he should be allowed to withdraw his guilty plea because he allegedly was not advised of his right to a separate trial on his status as an habitual offender.  In rejecting MacLeod's challenge to his guilty plea, the Appeals Court did not render a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Therefore, the petition should be denied.

Under federal law, as determined by the United States Supreme Court:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.  Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 762, 102 L. Ed. 2d 927 (1989).

Accord United States v. Grant, 114 F.3d 323, 329 (1ˢᵗ Cir. 1997).  The record must disclose that a guilty plea was "intelligent and voluntary."  Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1711-12 (1969).  "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  Parke v. Raley, 506 U.S. 20, 29, 113 S. Ct. 517, 523, 121

L. Ed. 2d 391 (1992) (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)).  "That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination."  <u>Id.</u>  Of particular significance to the instant case, the state court's factual determinations in connection with its assessment of the validity of a guilty plea are "entitled to the presumption of correctness accorded state court factual findings under 28 U.S.C. § 2254(d).  <u>Id.</u> at 35, 113 S. Ct. at 526.

There is no question that the state court applied the appropriate standard in assessing MacLeod's guilty plea.  Thus, the Appeals Court relied on <u>Commonwealth v. Kopsala</u>, 58 Mass. App. Ct. 387, 790 N.E.2d 1093 (2003), which expressly recognizes that a "right to a jury trial is a fundamental right to a criminal defendant in order to preserve a fair trial" and that any waiver of the right to a jury trial must be made "voluntarily and intelligently."  <u>Id.</u> at 390, 790 N.E.2d at 1096.  Consequently, MacLeod has failed to establish that the decision was "contrary to" clearly established federal law.[4]

Similarly, MacLeod has not established that the Appeals Court, having correctly identified the governing legal principle, unreasonably applied it to the facts of MacLeod's case.  The trial judge and the Appeals Court carefully reviewed the record in connection with MacLeod's guilty plea.  They concluded, and the record confirms, that MacLeod

---

[4] MacLeod also has proffered no cases and none have been found which establish that the Appeals Court decided the case differently than the Supreme Court has done on materially indistinguishable facts.

was advised that he was being "charged with breaking and entering with intent to commit a felony pursuant to Mass. General Laws, Chapter 266, Section 18, being charged as an habitual criminal." Plea Tr. 4. He was then asked if he wanted to change his "plea as to that offense now before the Court," which clearly included his status as an habitual criminal. Id. The judge confirmed that the indictment was for "breaking and entering with the intent to commit a felony as an habitual offender." Id. at 5. All of the facts of both the breaking and entering charge as well as the prior convictions which created MacLeod's status as an habitual offender were reviewed with the defendant before the guilty plea was accepted, and he expressly confirmed that he had been convicted of the relevant prior crimes. Id. at 9-12. MacLeod was undeniably advised that by pleading guilty he was waiving his rights to a trial. Id. at 7-8. Under these circumstances, there can be no dispute that MacLeod "sufficiently understood the elements or nature of the crimes to plead knowingly." See and compare Commonwealth v. Colon, 439 Mass. 519, 529, 789 N.E.2d 566, 573 (2003). See also Commonwealth v. Kopsala, 58 Mass. App. Ct. at 390, 790 N.E.2d at 1096 ("A properly conducted colloquy accompanied by a written jury waiver signed by the defendant is sufficient to establish, at least prima facie, that the waiver was both voluntary and intelligent.").

After reviewing the record, the Appeals Court held that there was "no merit to the strained contention that a colloquy must advise a defendant redundantly that waiver of the right to a jury trial encompasses the entire indictment, including enhanced penalty or subsequent offense provisions. Such is apparent from the context and colloquy as a

whole." SA Ex. 5 (emphasis added).  To the extent that this is deemed a factual determination, it is not "objectively unreasonable" and therefore the presumption of correctness applies.  See Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003).  Nor is the decision an unreasonable application of the federal principles requiring that a waiver of a jury trial must be voluntary and intelligently made.

MacLeod alleges that the trial judge violated the procedures established by Mass. Gen. Laws ch. 278, § 11A, which, he argues, requires a separate colloquy concerning his waiver of his right to a jury trial on his status as an habitual criminal.  As that statute, entitled "Habitual criminals; separate trial on issue of prior conviction," provides in relevant part:

> If a defendant is charged with a crime for which more severe punishment is provided for second and subsequent offenses, and the complaint or indictment alleges that the offense charged is a second or subsequent offense, the defendant on arraignment shall be inquired of only for a plea of guilty or not guilty to the crime charged, and that portion of the indictment or complaint that charges, or refers to a charge that, said crime is a second or subsequent offense shall not be read in open court....  If a defendant pleads guilty or if there is a verdict or finding of guilty after trial, then before sentence is imposed, the defendant shall be further inquired of for a plea of guilty or not guilty to that portion of the complaint or indictment alleging that the crime charged is a second or subsequent offense.  If he pleads guilty thereto, sentence shall be imposed; if he pleads not guilty thereto, he shall be entitled to a trial by jury of the issue of conviction of a prior offense, subject to all of the provisions of law governing criminal trials.  A defendant may waive trial by jury....

(emphasis added).

As an initial matter, it is not clear that this statute was violated — MacLeod was given the opportunity to plead guilty both to the underlying crime and to his status as an habitual criminal.  There is nothing in the statute which requires a separate confirmation that he was waiving his right to a jury trial as to both components of the crime charged.  Moreover, any error which may have occurred would, at most, be a technical error in the procedure used to take a guilty plea.  "Such a violation is neither constitutional nor jurisdictional" and, thus, would not support the issuance of a writ of habeas corpus. United States v. Timmreck, 441 U.S. 780, 783, 99 S. Ct. 2065, 2085, 60 L. Ed. 2d 634 (1979) (failure to advise defendant of a special parole term constitutes a technical viola-tion of Rule 11, but no constitutional or jurisdictional violation warranting habeas relief). "Nor can any claim reasonably be made that the error here resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" Id.  MacLeod does not dispute the fact that he was convicted of the prior crimes at issue, or that he qualified as an habitual criminal.  Nor does he claim that he would have proceeded differently if he had been separately advised of his right to a jury trial.  There is no basis for issuing a writ in the instant case.

MacLeod argues further that the need to obtain a separate waiver of a jury trial on that portion of the indictment charging him as an habitual offender is mandated by Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny.  See Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621

(2005).[5]  All of these cases were decided after MacLeod's guilty plea was entered.  Since

these cases are not applied retroactively, they have no application to the instant petition.

See Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005); United States v.

Fraser, 407 F.3d 9, 11 (1st Cir. 2005); Cuevas v. DeRosa, 386 F.3d 367, 368 (1st Cir.

2004).  In any event, since the trial judge made no findings of fact other than the

existence of prior convictions, and the defendant admitted the relevant facts, these cases

do not require a jury trial.  Thus, as Apprendi held, and Booker confirmed, "any fact

(other than a prior conviction) which is necessary to support a sentence exceeding the

maximum authorized by the facts established by a plea of guilty or a jury verdict must be

admitted by the defendant or proved to a jury beyond a reasonable doubt."  Booker, 543

U.S. at 244, 125 S. Ct. at 756 (emphasis added).  As the instant case involves both a prior

conviction, and facts admitted by MacLeod, Apprendi and its progeny are not applicable.

　　　In sum, the Appeals Court decision rejecting MacLeod's claim that, due to an

insufficient colloquy, he did not voluntarily and intelligently waive his right to a jury trial

as to his status as an habitual criminal was not contrary to, or an unreasonable application

of, federal law.  Therefore, this court recommends that MacLeod's petition based on this

claim be denied.

---

[5] Although Booker was decided after MacLeod filed his briefs, this court assumes he would include Booker in his argument.

C.     **Ineffective Assistance of Counsel**

MacLeod raises three alleged errors in connection with his claim of ineffective

assistance of counsel.  Thus, he objects to a letter his counsel sent to the Assistant District

Attorney on August 24, 1999 in which counsel stated that it was "not a case for a trial" as

"it is not winnable."  Pet. Mem. (Docket No. 11) at 12.  He also claims error in that his

counsel allegedly failed to investigate that he was on the premises with permission of the

homeowner.  Id. at 12-13.  Finally, he objects that his counsel was incompetent when he

failed to obtain a separate trial on the issue of his status as a career offender.  Id.  These

arguments apparently were rejected by the trial judge and the Appeals Court, although

they were not all separately addressed.  There is no basis for granting a writ of habeas

corpus.

Addressing the claimed errors in reverse order, for the reasons detailed above,

there was no error in connection with MacLeod's guilty plea to the charge of being an

habitual criminal.  Moreover, MacLeod has failed to establish that he suffered any harm

as a result of the procedure followed, or that the results of the proceedings would have

been different.  Therefore, there is no basis for his claim of ineffective assistance of

counsel on this grounds.  See Knight, 447 F.3d at 15.

With respect to his claim that counsel failed to investigate whether he was on the

premises lawfully, the trial judge rejected this argument as it was inconsistent with the

facts to which MacLeod had pleaded under oath.  MacLeod has not proffered any

evidence from the homeowner or any documentation to support his claim.  Nor does he

offer any persuasive explanation as to why he did not know whether he was on the premises lawfully at the time he was arrested, or by the time he entered his guilty plea. MacLeod has not met his heavy burden of establishing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

Finally, a review of the letter sent by counsel in its entirety defeats MacLeod's claim that it deprived him of the right to a fair trial, or waived his constitutional rights. See Pet. Mem. at 12.  On August 24, 1999, MacLeod's counsel wrote to the Assistant District Attorney explaining his resolution of other cases MacLeod had had pending and seeking to resolve the Superior Court case to minimize the jail and parole time MacLeod would have to serve.  See SA Ex. 3 at attachment to A.9.  As his counsel wrote in relevant part:

> Now that the first 2 matters are out of the way, I respectfully request that we likewise dispose of this matter by way of a plea agreement. Insofar as the earliest that Mr. MacLeod can be released from prison is April of the year 2002, and with a 2 year suspended sentence hanging over him upon such release, is there any way we could jointly recommend a concurrent sentence in this case, with even more probation time hanging over him?  In other words, for what-ever term of probation you would deem appropriate, Mr. MacLeod would be in grave danger of being returned to prison for even a minor infraction.
>
> Please let me add that most of my client's legal woes are a direct result of drug addiction.  I think you will see by reviewing his rather impressive record that, when he gets back on drugs, he commits crimes.  And when he is clean and sober he is also crime free.

Id.  MacLeod does not indicate how this attempt to strike a favorable deal was ineffective

assistance of counsel.  Nor is there any evidence that, had MacLeod elected not to plead,

counsel would not have represented him fully and effectively.  MacLeod was extensively

questioned about the voluntariness of his plea and it was clear from the plea colloquy that

MacLeod, not counsel, was being asked to waive his constitutional rights.  There is no

evidence of ineffective assistance of counsel and the habeas petition should be denied.

Finally, MacLeod is seeking an evidentiary hearing to expand the record as to his

claim of ineffective assistance of counsel.  See Pet. Mem. at 18.  However, he has not met

the standard for an evidentiary hearing as set forth in 28 U.S.C. § 225(e)(2), which

provides as follows:

> If the applicant has failed to develop the factual basis of a claim in
> State court proceedings, the court shall not hold an evidentiary
> hearing on the claim unless the applicant shows that --
>
> (A)    the claim relies on --
>
>> (i)    a new rule of constitutional law, made retroactive to
>> cases on collateral review by the Supreme Court that was
>> previously unavailable; or
>>
>> (ii)    a factual predicate that could not have been previously
>> discovered through the exercise of due diligence; and
>
> (B)    the facts underlying the claim would be sufficient to establish
> by clear and convincing evidence that but for constitutional error, no
> reasonable fact-finder would have found the applicant guilty of the
> underlying crime.

Since MacLeod's claim does not involve a new rule of constitutional law, and does not

involve facts which could not have been discovered prior to his guilty plea, an evidentiary

hearing is not appropriate.

-20-

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that MacLeod's petition for a writ of habeas corpus be DENIED.[6]


         / s / Judith Gail Dein
        Judith Gail Dein
        United States Magistrate Judge

---

[6]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).