UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
THOMAS MACLEOD,        )
        Petitioner,    )
                       )
v.                     )   CIVIL ACTION
                       )   NO. 04-11629-PBS
DAVID NOLAN,           )
        Respondent.    )
```

FILED
IN CLERKS OFFICE
2007 APR 20 P 12:07
U.S. DISTRICT COURT
DISTRICT OF MASS.

## PETITIONER'S OBJECTION TO THE
## MAGISTRATE'S REPORT AND RECOMMENDATION

Now comes the above petitioner, Thomas MacLeod ("MacLeod") and respectfully objects to the proposed (by Dein,U.S.M.J.), January 24, 2007, Report and Recommendation ("Report"), denying the Petition for a Writ of Habeas Corpus. The written objections to the Report and the basis for those objections are as follows:

Introduction:

MacLeod is seeking the Great Writ on two grounds: (1) is that his plea was not intelligently or voluntarily waived at the change of plea colloquy on November 1, 1999, before Associate Justice E. Donovan. And that his counsel was ineffective.

MacLeod argues through these objections that he has scaled the promontry of the AEDPA by showing the (last) state court adjudication on the merits was or " resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C.,§ 2254(d)(1).

1.

**OBJECTIONS**

I.                 THE PRESUMPTION OF CORRECTNESS
GIVEN TO THE MEMORIALIZED WAIVER IS FLAWED

There is clear and convincing evidence to rebut the Report's presumption that MacLeod memorialized a written jury waiver form during the hearing on November 1, 1999. At Exhibit 3, or paginating the respondent's supplemental answer also attached as A), the document bearing the rubric " Waiver of Defendant's Rights".

It is crystal clear that this document reflects that MacLeod waived his "Rights" at a earlier hearing before Associate Justice McDaniel. And this form is being determined incorrectly by the Report and unreasonably by the Massachusetts Appeals Court.

MacLeod has met his burden that this federal court should not credit the Appeal's Court findings of fact. Or that made by the state court (Donovan,J.), issued in, Memorandum of Decision and Order denying motion for new trial. SA Ex.3 at A.14. See, King v. Bowersoz, 291 F.3d 539, 540 (8th Cir. 2002); Everett v. Beard, 290 F.3d 500, 507 (3rd Cir. 2002); quoted in Rashad v. Walsh, 300 f.3d 27, 35 91st cir. 2002).

The earlier hearing before Justice McDaniel, was a change of plea hearing that was aborted by that court because MacLeod balked at answering a question during that colloquy. Also, there is another "historical fact" (Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001), that needs illumination here, that recommendation and plea agreement called for a sentence of 7 to 8 years with the Habitual indictment being dismissed.

2.

This "basic, primary, or historical fact[]" will be incorporated into the objections and, it is a unreasonable application of the facts.

II.     MACLEOD'S COUNSEL NEVER EXPLAINED WHAT THE COMMMONWEALTH HAD TO PROVE IN ORDER TO FIND HIM GUILTY OF BEING A HABITUAL CRIMINAL

The Report, at page 4, incorrectly presumes that MacLeod's counsel has ever explained to him the elements of the habitual criminal indictment.

Counsel explained to MacLeod, the key elements to the substantive indictment of, breaking and entering, in the daytime with intent to commit a felony.

Even the grammatical wording of the state court decision is out of context with the historical facts, because as detailed further on in this salmagundi of objections, counsel, the trial judge, the prosecution and MacLeod did not understand the milieu of the complex portion of the habitual indictment. As, it is a distinct, and seperate indictment. Commonwealth v. Cody, 165 Mass. 353,, 42 N.E.2d 575 (1896): Commonwealth v. Miranda, 441 Mass. 783 789 (2004); Bynum v. Commonwealth, 429 Mass. 705 (1999).

It is contrary to the facts that counsel was not aware, and did not adequately apprise MacLeod of all the elements of the habitual offender component of the indictment(s).

III.     THE STATE COURT RECORD AND THE REPORT DOES NOT DISCLOSE THAT MACLEOD'S PLEA WAS DETERMINED TO BE " INTELLIGENTLY OR VOLUNTARILY" GIVEN

On page 16 of the Report, it states, " it is not clear that [ Mass.Gen.Laws ch. 278,§ 11A (now on 278)] this statute was violated". Contrary to the Report it is clear that the state

3.

law 278 " requires a seperate confirmation that [MacLeod] was waiving his [jury] right[s] as to both components of the crime charged".(Report at 16).

Chapter 278, adequately emphasised on page 15, of the Report requires, without question that a defendant who pleads guilty, **shall be further inquired** of a plea of guilty to that portion of the .. indictment alleging that the crime is a ... subsequent offense.

The Supreme Judicial Court and the Appeals Court have long held that a defendant has a seperate and distinct jury right to a trial by jury on the sentencing enhancement indictment. See, Commonwealth v. Thompson, 427 Mass. 729 (1998); and, Commonwealth v. Chaplin, 50 Mass. App. Ct. 365 (2000).

This established law is in compliance with the United States Supreme Court jurisprudence, because, "[e]ven though a habitual criminal charge does not state a seperate offense, the determination of whether one is a habitual criminal is ' essentially independent' of the determination of guilt on the underlying substantive offense". Oyler v. Boles, 368 U.S. 448, 452-53, 82 S.Ct.501, 503-04 (1962); quoting Chandler v. Fretag, 348 U.S. 3, 8, 75 S.Ct. 1, 4 (1954). And, " although the habitual issue may be combined with the trial of the felony charge ' it is a distinct issue, and it may appropriately be the subject of seperate determination'". Boles, at 452,S.Ct. at 502.; quoting Graham v. West Virginia, 224 U.S. 616, 625, 32 S.Ct. 583 (1912).

The Appeals Court ruling, is contrary, and an unreasonably application, specifically to, " There is no merit to the strained contention that a colloquy must advise [MacLeod] redundantly that waiver of the jury trial encompasses the whole indictment."

4.

The Report's is with all due respect " objectively unreasonable" and therefore the presumption of correctness should not apply. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003); Bui v. Dipaolo, 170 F.3d 232, 243 (1st cir. 1999).

How could MacLeod intelligently and voluntarily plead to the habitual portion of the indictment if it required by its mandatory wording, a further inquiry. The facts surely display that the court did not further inquire from MacLeod a plea to the habitual charge. There is an obvious plea proceeding that was marred by " a fundamental defect which inherently result[ed] in a complete miscarrage of justice" or " an omission inconsistent with rudimentary demands of fair procedure". Hill v. United States, 368 U.S. 424, 82 S.Ct. 468 (1962); United States v. Japa, 994 F.2d 899, 902 (1st Cir.1993): U.S. v. Fergusion, 60 F.3d 1. 3 (1st Cir.1995).

MacLeod's plea was not "intelligently or voluntarily" made in accordance with Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 757 (1969), and the Appeals Court's decision is contrary, or an unreasonable appplication of that precedent.

IV.     **MACLEOD CONTRARY TO THE REPORT HAS ALWAYS CLAIMED HE PROCEED DIFFERENTLY IF HE HAD BEEN ADVISED OF HIS RIGHTS TO A SEPERATE JURY TRIAL IS FLAWED**

The record is abundant that I would of certainly proceeded differently if the state court or my counsel had advised me of Fifth Amendment rights to a jury trial.

V.     **THE RETROACTIVITY TO APPRENDI**

Very succinctly, Apprendi's has tentacles back to McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411 (1986). As the habitual indictment is " the tail that wags the dog " the substantive offense.

5.

Or to the long-standing precedent that, " elements must be charged in the indictment, submitted to the jury and proven by the Government beyond a reasonable doubt". Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215 (1999).

Lastly, with all due respect to the Report's case citing on Apprendi's retroactiveness, Cruz v. United States, 54 Fed. Appx. 331, 331 WL 105355 (1st Cir. 2003), seemingly left this "question open".

VI.        MACLEOD'S COUNSEL WAS INEFFECTIVE

There is a plethora of basises and facts that illuminate that Macleod's counsel " made errors so serious that [he] was not functioning as the 'counsel' guaranteed [] by the Sixth Amendment". Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

The errors are; counsel did not adequately advise MacLeod on the intricate law of a further inquiry on the habitual offender indictment, acquienced trial strategy to the prosecutor, and failed to investigate the facts.

Ineffective assistance claims require a great deal of factual development, and unfortunately the record is absent of some of these details. What is on the record is the crystal clear quagmire with the advise on the habitual trail requirement, under 278. The letter counsel wrote to the assistant district attorney is on the record. In which counsel alluded to this matter being "unwinable". And, the trail court denied MacLeod funds for an investigator, so that he could prove that he had painted and roofed on the premises in question. And that the owners of the premises, as opposed to the care-taker in the

6.

indictment, had allowed him access to the building. These facts were not heard at the hearing on the motion for a new trial, and should of been heard, because they raise substatial constitutional issues. And, require independent development of evidence outside of, and collateral to, the criminal proceeding. Brien v. United States, 695 F.2d 10, 15 (1st Cir. 1982); Cyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708 (1980).

The record does show that counsel was defective, and it demonstrates that counsel was inferior to the point of objective unreasonableness. United States v. McGill, 11 F.3d 223 (1sT cir 1993); Strickland 466 U.S. at 689-40.

Moreover, the prejudice MacLeod suffered at the counsel's ineffectiveness is obvious. Not only did MacLeod receive a maximum sentence of ten (10) years without a viable waiver of his constitutional rights to a jury trial. He suffered severe prejudice by the stigma of being labled a habitual criminal without a jury deliberating. Nor was MacLeod afforded the original plea agrrement of 7-8 years that was specifically agreed upon in the waiver to Judge McDaniel.

MacLeod's assertion of innocence likewise was disregarded by counsel. Parrila-Tirado v. U.S., 22 F.3d 368, 371 (1st Cir. 1994); accord United States v. Kobrowsky, 711 F.2d 449, 455 (1 st Cir. 1983). And because the record is garbled an evidentiary bearing is required.

The prejudice MacLeod suffered at the hands of his unconstitutional counsels inadequate lawyering was ineffective as established by the United States Supreme Court.

7.

## CONCLUSION

For all the above reasons and in the interest of justice the Report and Recommendation denying MacLeod the Great Writ should not be adopted. And, because there are substatial absences of facts in the record an evidentaary hearing to ascertain the facts in those regards is required, this matter should be sent back to the Superior Court with orders accordingly,

April 12m 2007

Respectfully Submitted,
By the petitioner,

Thomas MacLeod, W-56485
OCCC Minimum
1 Administration Rd.
Bridgewater, MA

### Certificate of Service

I, Thomas MacLeod, hereby certify that I sent a copy of these objections to Susan Reardon, @ Attorney General's Office, One Ashburton Place, Boston, MA postage prepaid.
Thomas MacLeod